## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **RONALD WOODRUM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 24-cv-3176** |
| | ) | |
| **ILLINOIS DEPARTMENT OF** | ) | |
| **TRANSPORTATION, OMER** | ) | |
| **OSMAN, BECKY KOEHLER,** | ) | |
| **JEFFREY MYERS, TALIA DEAN,** | ) | |
| **NICOLE ALEMAN-HUGHES, AND** | ) | |
| **UNKNOWN OTHERS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### OPINION AND ORDER

This matter is before the Court on Defendants Illinois Department of Transportation, Omer Osman, Becky Koehler, Jeffrey Myers, Talia Dean, Nicole Aleman-Hughes, and Unknown Others' ("Defendants") Motion to Dismiss (d/e 8). Plaintiff Ronald Woodrum's ("Plaintiff") Complaint (d/e 1) states a claim upon which relief can be granted, so Defendants' Motion (d/e 8) is GRANTED in part and DENIED in part.

### I.    BACKGROUND

The following facts are alleged in Plaintiff's Complaint (d/e 1)

and are accepted as true at the motion to dismiss stage. <u>Bible v.</u> <u>United Student Aid Funds, Inc.</u>, 799 F.3d 633, 639 (7th Cir. 2015).

On or about September 15, 2014, the Illinois Department of Transportation ("IDOT") employed Plaintiff as a Highway Maintainer. d/e 1, p. 3. At all times relevant to this proceeding, Plaintiff was employed by the State of Illinois, and his employment was governed by both the Illinois Personnel Code and certain collective bargaining agreements. <u>Id.</u>

Plaintiff initially worked for IDOT in a temporary, seasonal capacity, in that he worked during the winter months and returned to work the following fall. <u>Id.</u> Effective June 1, 2021, IDOT appointed Plaintiff to a permanent position as a Highway Maintainer. <u>Id.</u> On December 1, 2021, Plaintiff became a certified employee, at which point his employment could not be terminated without cause such that he had a property interest in his position as an IDOT Highway Maintainer. <u>Id.</u> at pp. 3-4. As of May 1, 2022, Plaintiff was an "eligible employee" of IDOT under the Family and Medical Leave Act, 29 C.F.R. § 825.102 ("FMLA"), as he had worked there for more than twelve months and had worked more than

1,250 hours in the preceding twelve months. Id. at p. 5.

On May 5, 2022, Plaintiff was injured at work and notified IDOT that he needed to be away from work because of a serious personal health condition. Id. at pp. 4-5. His injuries—which Plaintiff does not name or describe—required hospitalization and a continuing course of care, such that his injuries were a serious health condition as defined by the FMLA. Id.

On May 6, 2022, Plaintiff was released from the hospital. Id. On May 16, 2022, Plaintiff was given medical clearance to return to work. Id. When Plaintiff returned to work on May 16, 2022, he took another medical leave stemming from the injury. Id. Plaintiff does not state the reason for this leave nor his doctor's position on it.

Plaintiff was not medically able to return to work until July 15, 2022. Id. Plaintiff attempted to return to work on July 15, 2022, but he was not allowed to do so by the Defendants working for IDOT: Secretary Omer Osman, Director of Personnel Management Becky Koehler, Region 4 Engineer Jeffrey Myers, Employee Assistance Specialist Talia Dean, District 6 Personnel Manager Nicole Aleman-Hughes, and others. Id. at pp. 2-4. Defendant Osman approved the

decision not to allow Plaintiff to work after July 15, 2022. Id. at p.
7. Defendants Koehler, Myers, Dean, and Aleman-Hughes were "all
involved in the decision," though Plaintiff does not specify how they
were involved. Id. at pp. 7-8.

Plaintiff alleges that Defendants classified their refusal to allow
him to work as an unpaid leave of absence, that the refusal was
done against Plaintiff's will, and that the refusal had the same effect
as a suspension because Plaintiff was denied the income associated
with his employment. Id. at p. 7.

Plaintiff asked to return to work on multiple occasions. Id.
Defendants ignored Plaintiff's requests without affording him any
pre-deprivation opportunity to be heard before, nor any meaningful
post-deprivation opportunity to be heard after, his unpaid leave of
absence began on July 15, 2022. Id. at pp. 7-8.

Plaintiff was ultimately not returned to his position until May
9, 2023. Id. at p. 4. IDOT had no medical or disciplinary basis for
preventing him from returning to work after July 15, 2022. Id.

On July 1, 2024, Plaintiff filed a two-count Complaint (d/e 1)
against Defendants.  Id. at p. 1. Plaintiff alleges in Count I of the

Complaint that IDOT "violated the regulations implementing the FMLA and its substantive provisions" as well as Plaintiff's "substantive rights under the FMLA" by refusing to return him to work. Id. at p. 6. Plaintiff alleges in Count II of the Complaint that Defendants violated his substantive rights to due process under the Fourteenth Amendment by refusing to allow him "to work as of July 15, 2022, without affording him an opportunity to be heard" and "after July 15, 2022, and not providing him with a meaningful post-deprivation hearing." Id. at pp. 7-8.

On November 15, 2024, Defendants moved to dismiss all counts for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (d/e 8).  On December 18, 2024, Plaintiff filed his Response (d/e 10), stating in relevant part that Count II "alleg[es] a violation of his rights to procedural due process." Id. at p. 6.

## II.    JURISDICTION

This Court has subject matter jurisdiction because Plaintiff's claims arise under the FMLA, which is a federal statute, and the Due Process Clause of the Fourteenth Amendment of the United

States Constitution.  See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States"). Venue is proper because Defendant IDOT is headquartered in the Central District of Illinois and because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Central District of Illinois.  See 28 U.S.C. § 1391(b).

### III.  LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the complaint's sufficiency. Christensen v. Cnty. of Boone, 483 F.3d 454, 458 (7th Cir. 2007).  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" that puts the defendant on notice of the allegations.  Fed. R. Civ. P. 8(a)(2), see also Higgs v. Carver, 286 F.3d 437, 439 (7th Cir. 2002).  The Court accepts all well-pled facts alleged and draws all possible inferences in the plaintiff's favor.  Tamayo v. Blagojevich, 526 F.3d 1074, 1081 (7th Cir. 2008).

The complaint must put forth plausible grounds to

demonstrate a claim for relief. <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 556 (2007). A plausible claim is one from which the court can draw reasonable inferences that the defendant is liable for the misconduct alleged. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). Additionally, the complaint must raise a reasonable expectation that discovery will reveal evidence of liability. <u>Twombly</u>, 550 U.S. at 556. A complaint merely reciting a cause of action or conclusory legal statements is insufficient. <u>Iqbal</u>, 556 U.S. at 678.

## IV.   ANALYSIS

### A. Plaintiff Sufficiently Pleads an FMLA Claim.

Plaintiff alleges in Count I of his Complaint that by refusing to return him to work, IDOT "violated the regulations implementing the FMLA and its substantive provisions" as well as Plaintiff's "substantive rights under the FMLA." <u>Id.</u> at p. 6.

The FMLA creates a cause of action for employees whose employers "interfere with, restrain, or deny" the employee's right to FMLA leave. 29 U.S.C. §§ 2615(a)(1), 2617(a).  To prevail on an FMLA interference claim, an employee must show that: (1) he was FMLA-eligible; (2) his employer was covered by the FMLA; (3) he was

entitled to FMLA leave; (4) he provided sufficient notice of his intent to take FMLA leave; and (5) his employer denied his FMLA benefits to which he was entitled.  See Hickey v. Protective Life Corp., 988 F.3d 380, 387 (7th Cir. 2021) (citing Burnett v. LFW Inc., 472 F.3d 471, 477 (7th Cir. 2006)).

Defendants' Motion to Dismiss asserts that Plaintiff does not plead the necessary fifth element of an FMLA interference claim because he "fails to allege sufficient well-pleaded facts which, if true, would support a claim that his employer denied him FMLA benefits to which he was entitled." d/e 8, p. 3. Defendants argue that Plaintiff "pleads no support for his vague and conclusory claim that he was purportedly 'able' to return to work" on July 15, 2022, noting that Plaintiff "already had one 'false start' at resuming work as a Highway Maintainer after being (supposedly) medically cleared." Id. at p. 4. Defendants also argue that Plaintiff "demurs from pleading that his purported ability to return to work on July 15, 2022, was without requested modification." Id.

Plaintiff responds that "nothing in the complaint…supports the argument" that he was unable to return to work in July, and

that it could not "possibly be drawn from the complaint" that he "sought to return to work with restrictions." d/e 10, p. 6.

The pleading requirement at the motion to dismiss stage is a short and plain statement of the claim, not a comprehensive statement of any and all information supporting the claim. See Fed. R. Civ. P. 8(a)(2), see also Higgs v. Carver, 286 F.3d 437, 439 (7th Cir. 2002). Plaintiff pleads that he was able to return to work in July, that Defendant refused to allow him to return to work, and that Plaintiff was thus "denied his FMLA benefits to which he was entitled." See Hickey v. Protective Life Corp., 988 F.3d 380, 387 (7th Cir. 2021) (citing Burnett v. LFW Inc., 472 F.3d 471, 477 (7th Cir. 2006)). Therefore, Plaintiff has sufficiently pled a violation of his FMLA rights, so Defendants' Motion to Dismiss (d/e 8) is DENIED as to Count I of Plaintiff's Complaint (d/e 1).

## B. Plaintiff Sufficiently Pleads a Procedural Due Process Claim.

Plaintiff alleges in Count II of the Complaint that Defendants violated his substantive rights to due process under the Fourteenth Amendment by refusing to allow him "to work as of July 15, 2022, without affording him an opportunity to be heard" and "after July

15, 2022, and not providing him with a meaningful post-deprivation hearing." d/e 1, pp. 7-8. Plaintiff clarifies in his Response to Defendants' Motion to Dismiss that Count II "alleg[es] a violation of his rights to procedural due process." d/e 10, p. 6.

The Court notes that "[i]t is well-settled that new arguments cannot be made for the first time in reply." Gold v. Wolpert, 876 F.2d 1327, 1331 n.6 (7th Cir. 1989). Nonetheless, this Court, instead of directing Plaintiff to re-file his Complaint to properly reflect his procedural due process claim, will address the Complaint as presented to best serve judicial economy.

The Due Process Clause of the Fourteenth Amendment forbids a state from depriving any person of "life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  "An essential component of a procedural due process claim is a protected property or liberty interest."  Minch v. City of Chi., 486 F.3d 294, 302 (7th Cir. 2007). "To demonstrate a procedural due process violation of a property right, the plaintiff must establish that there is '(1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process.'" Khan v.

Bland, 630 F.3d 519, 527 (7th Cir. 2010) (quoting Hudson v. City of Chi., 374 F.3d 554, 559 (7th Cir. 2004)).

### 1. Plaintiff Establishes a Cognizable Property Interest.

Plaintiff must establish a cognizable property interest, which "can be created in one of two ways, '1) by an independent source such as state law securing certain benefits; or 2) by a clearly implied promise of continued employment.'" Phelan v. City of Chi., 347 F.3d 679, 681 (7th Cir. 2003) (citing Shlay v. Montgomery, 802 F.2d 918, 921 (7th Cir. 1986). "In order to give rise to a constitutionally protected property interest, a statute or ordinance must go beyond mere procedural guarantees to provide some substantive criteria limiting the state's discretion—as can be found, for example, in a requirement that employees be fired only 'for cause.'" Cain v. Larson, 879 F.2d 1424, 1426 (7th Cir. 1989).

Defendants argue that Plaintiff's pleading lacks "the pertinent terms of a contract or other source of his claim to the protected interest." d/e 8, p. 8. Defendants cite Palka v. Shelton, 623 F.3d 447, 452 (7th Cir. 2010), in which the Seventh Circuit Court of Appeals found that "[w]hen a plaintiff alleges that the due-process

entitlement arises from a collective-bargaining agreement, he must identify specific terms of the agreement that contained a promise of continued employment." <u>See</u> d/e 8, p. 8. Defendants also cite <u>Shell v. Chicago Housing Authority,</u> 1995 U.S. Dist. LEXIS 10198 (N.D. Ill. 1995) at p. 11, for the proposition that the "absence of [a] manual and/or allegations setting forth its terms [is] fatal to employee's § 1983 due process claim regarding 30-day suspension." <u>See</u> d/e 8, p. 8.

Plaintiff alleges that his employment "was governed by both the Illinois Personnel Code and certain collective bargaining agreements" and "could not be terminated without cause." d/e 1, pp. 3-4. The Illinois Personnel Code states, in relevant part, that:

> No officer or employee under jurisdiction B, relating to merit and fitness, who has been appointed under the rules and after examination, shall be removed discharged or demoted, or be suspended for a period of more than 30 days, in any 12 month period, except for cause, upon written charges approved by the Director of Central Management Services, and after an opportunity to be heard in his own defense if he makes written request to the [Civil Service] Commission within 15 days after the serving of the written charges upon him.

20 ILCS 415/11. Jurisdiction B is the Illinois Personnel Code section pertaining "to selection and tenure on the basis of merit and

fitness," and only exempts IDOT's "technical and engineering staffs." 20 ILCS 415/8b; 20 ILCS 415/4c (12).

In Palka, the plaintiff pled that he was a collective-bargaining unit member, but did not identify a relevant provision in the collective-bargaining agreement for his due process entitlement. See Palka v. Shelton, 623 F.3d 447, 452 (7th Cir. 2010). In Shell, the plaintiff referenced the Chicago Housing Authority's Administrative Manual in his complaint, but he did not attach it to his pleadings. See Shell v. Chicago Hous. Auth., No. 94 C 7632, 1995 WL 431255, at *2 (N.D. Ill. July 20, 1995). Conversely, the plaintiff in Phelan based his property interest claim on sections of the Illinois Municipal Code. See Phelan v. City of Chi., 347 F.3d 679, 681-82 (7th Cir. 2003). While the Seventh Circuit found that other Municipal Code sections contradicted the plaintiff's alleged property interest, the judges did not take issue with the plaintiff basing his property interest claim on such code provisions. See id.

Here, Plaintiff's Complaint cited the Illinois Personnel Code, a publicly available law containing a promise of continued employment absent cause—analogous to "a requirement that

employees be fired only 'for cause.'" <u>Cain v. Larson</u>, 879 F.2d 1424, 1426 (7th Cir. 1989). Therefore, Plaintiff establishes a cognizable property interest through the independent source of state law. <u>See</u> <u>Phelan</u>, 347 F.3d at 681; <u>see also</u> <u>Khan v. Bland</u>, 630 F.3d 519, 527 (7th Cir. 2010).

### 2. Plaintiff Establishes a Deprivation of His Cognizable Property Interest.

Plaintiff must also establish a deprivation of his cognizable property interest. <u>See</u> <u>Khan</u>, 630 F.3d at 527.

Defendants argue that "Plaintiff's allegations fail to establish that any of the individual Defendants deprived him of a constitutionally protected property interest to which he was legitimately entitled by allegedly delaying his return to work." d/e 8, p. 8. Defendants argue that "Plaintiff does not allege that he was terminated" or suffered "a new deprivation, but rather describes his employer maintaining the status quo as of July 15, 2022 – that being Plaintiff not being back at work (yet) after suffering an injury which resulted in a serious health condition." <u>Id.</u>

Plaintiff claims that his employment "could not be terminated without cause." d/e 1, pp. 3-4. He cites to the Illinois Personnel

Code, which states that covered employees can not be "suspended for a period of more than 30 days, in any 12 month period, except for cause." Id.; see also 20 ILCS 415/11.

Plaintiff claims that Defendants refused to allow him to work as of July 15, 2022 and "classified [the refusal decision] as a leave of absence" that was "unpaid." d/e 1, p. 7. Plaintiff argues the refusal decision "was done against his will and had the same effect as a suspension would have had. In this sense, he was denied the income associated with his employment." Id. Plaintiff pleads that IDOT had no medical or disciplinary basis for preventing him from returning to work after July 15, 2022, yet he "was ultimately not allowed to return to his position until May 9, 2023." Id. at p. 4. Plaintiff claims that Defendants Koehler, Myers, Dean, and Aleman-Hughes "were all involved in the decision not to allow [Plaintiff] to work and to deprive him of his opportunity to earn income," while Defendant "Osman approved the decision not to allow [Plaintiff] to work after July 15, 2022." Id. at p. 7.

Based on Plaintiff's allegations, IDOT placed him on an unpaid leave of absence akin to a suspension for approximately 298 days

without a medical or disciplinary basis. Therefore, Plaintiff establishes a deprivation of his cognizable property interest in the form of a suspension of over 30 days without cause. See Khan v. Bland, 630 F.3d 519, 527 (7th Cir. 2010).

### 3. Plaintiff Establishes a Denial of Due Process.

Lastly, Plaintiff must establish a denial of due process. See Khan, 630 F.3d at 527. "A claim based on random and unauthorized acts by state employees only requires a meaningful post-deprivation remedy, while a claim based on established state procedures requires the state to provide a pre-deprivation hearing, too." Calderone v. City of Chicago, 979 F.3d 1156, 1165 (7th Cir. 2020).

While Plaintiff references the Illinois Personnel Code and its employment protections afforded him, he challenges not the Code itself but the individual Defendants' "refus[al] to allow [him] to work as of July 15, 2022." d/e 1, p. 8. Since Plaintiff's Complaint does not challenge any established state procedures, this Court interprets the Complaint to assert denial of due process from the "random and unauthorized acts by state employees," which "only

requires a meaningful post-deprivation remedy." <u>Calderone</u>, 979 F.3d at 1165. "In this instance, [Plaintiff] must avail [him]self of … post-deprivation remedies or demonstrate that the available remedies are inadequate." <u>Id.</u> at 1166 (quoting <u>Cannici v. Vill. of Melrose Park</u>, 885 F.3d 476, 479 (7th Cir. 2018)) (internal quotation marks omitted).

Defendants argue that "Plaintiff fails to sufficiently articulate the purported inadequacy of post-deprivation remedies and likewise fails to sufficiently address his pursual or non-pursual thereof." d/e 8, p. 10. Plaintiff alleges in his Complaint that "[o]n multiple occasions, [he] requested to return to work, and his requests were ignored without affording any meaningful opportunity to be heard." d/e 1, p. 7. In other words, Plaintiff alleges that he pursued the post-deprivation remedy of a hearing, but that Defendants barred him from it. Therefore, Plaintiff establishes a denial of due process when Defendants denied him a hearing after refusing to allow him to return to work. <u>See</u> <u>Khan v. Bland</u>, 630 F.3d 519, 527 (7th Cir. 2010).

In sum, Plaintiff establishes all three requirements "to

demonstrate a procedural due process violation of a property right":
a cognizable property interest through the independent source of
state law, a deprivation of that property interest in the form of a
suspension of over 30 days without cause, and a denial of due
process when Defendants denied him a hearing after refusing to
allow him to return to work. See Khan, 630 F.3d at 527. Therefore,
Plaintiff sufficiently pleads a procedural due process claim.

### C. Plaintiff's Allegations as to Individual Defendants are Sufficient to State a Claim.

Plaintiff in Count II names Defendants Osman, Koehler,
Myers, Dean, and Aleman-Hughes in their individual capacities and
seeks various monetary awards. d/e 1, pp. 2-3, 8. Defendants
argue that "Plaintiff does not plead any related facts" indicating that
Defendants' acts are both the cause-in-fact and proximate cause of
Plaintiff's injury and that Plaintiff "thus fails to state a claim against
the individual Defendants." d/e 8, pp. 11-12. Defendants cite
another case previously before this Court, Williams v. Illinois State
Police, No. 19-cv-03164, 2020 WL 6050567 (C.D. Ill. Oct. 13, 2020).

As referenced in Williams, in determining the proper party who
may be held liable for a procedural due process claim, "the crucial

issue is personal (or departmental) responsibility." <u>Hoffman v. Knoebel</u>, 894 F.3d 836, 841 (7th Cir. 2018). Liability may be imposed only when an official causes the deprivation of liberty. <u>Id.</u> (citing <u>Kuhn v. Goodlow</u>, 678 F.3d 552, 555–56 (7th Cir. 2012)) (noting that "§ 1983 liability is premised on the wrongdoer's personal responsibility")). In sum, "the official's act must both be the cause-in-fact of the injury and its proximate cause." <u>Id.</u>

In <u>Williams</u>, the plaintiff argued that the defendant, Illinois State Police Director Brendan F. Kelly, was "responsible for all actions of the Illinois State Police," which this Court found "failed to allege facts that Defendant Kelly was personally involved in violating any of Plaintiff's rights." <u>Williams v. Illinois State Police</u>, 2020 WL 6050567, at *3 (C.D. Ill. Oct. 13, 2020).

Conversely, Plaintiff alleges here that when he "attempted to return to work on July 15, 2022, [he] was not allowed to do so by" Defendants Osman, Koehler, Myers, Dean, and Aleman-Hughes, who "refus[ed] to allow [Plaintiff] to work as of July 15, 2022." d/e 1, pp. 4, 8. Plaintiff further alleges that Defendant "Osman approved the decision not to allow [Plaintiff] to work after July 15,

2022." Id. at p. 7.

Plaintiff alleges facts beyond blanket responsibility for all departmental action as in Williams. Since Plaintiff pleads facts indicating that Defendants' acts—"refusing to allow [Plaintiff] to work as of July 15, 2022" and "approv[ing] the decision"—are both the cause-in-fact and proximate cause of Plaintiff's injury, his delayed reinstatement after July 15, 2022. Therefore, Plaintiff sufficiently states a claim as to the individual Defendants.

### D. Plaintiff's Request For Equitable Relief Against Defendants Osman, Koehler, and Myers in Their Official Capacities Is Not Available Under a § 1983 Claim and Is Thus Denied.

Plaintiff in Count II also requests "[e]quitable relief" and names Defendants Osman, Koehler, and Myers, "for the limited purpose of implementing equitable relief, in [their] official capacit[ies]." d/e 1, pp. 2-3, 8. Defendants argue that Plaintiff's request "for unspecified equitable relief [is] insufficient to state a claim for equitable relief against Defendants Omer Osman, Becky Koehler, and Jeffrey Myers in their official capacities." d/e 8, pp. 12-13 (internal citations omitted).

The Eleventh Amendment typically bars a state's citizens from

suing their own state. <u>See</u> <u>Hans v. Louisiana</u>, 134 U.S. 1 (1890).

But in <u>Ex parte Young</u>, 209 U.S. 123 (1908), the Supreme Court

held that a state official enforcing an allegedly unconstitutional, and

therefore void, state law "comes into conflict with the superior

authority of [the] Constitution" and is thus "stripped of his official

or representative character and is subjected in his person to the

consequences of his individual conduct." <u>Id.</u> at 159-160. "In

determining whether the doctrine of <u>Ex parte Young</u> avoids an

Eleventh Amendment bar to suit, a court need only conduct a

'straightforward inquiry into whether [the] complaint alleges an

ongoing violation of federal law and seeks relief properly

characterized as prospective.'" <u>Verizon Maryland, Inc. v. Pub. Serv.</u>

<u>Comm'n of Maryland</u>, 535 U.S. 635, 645 (2002) (internal citations

omitted).

Plaintiff's § 1983 claim alleges that Defendants Osman,

Koehler, and Myers "refus[ed] to allow [Plaintiff] to work as of July

15, 2022" and that Defendant Osman "approved the decision." d/e

1, pp. 7-8. Plaintiff admits, however, that he was "allowed to return

to his position [on] May 9, 2023," and he does not allege that

Defendants have resumed refusing to allow him to work. Id. at p. 4.

As such, Plaintiff's § 1983 claim does not allege an "ongoing violation of federal law," nor does his claim seek "relief properly characterized as prospective." Verizon Maryland, Inc., 535 U.S. at 645. Therefore, while Plaintiff's § 1983 claims against Defendants in their individual capacities may proceed, Defendants' Motion to Dismiss (d/e 18) is GRANTED as to Plaintiff's § 1983 claims against Defendants in their official capacities and his request for equitable relief in Count II of his Complaint (d/e 1).

### E. Plaintiff's Claims Against Individuals Are Not Really and Substantially Against the State.

Defendants argue that because each individually-named Defendant was an employee of IDOT, an arm of the State protected by sovereign immunity, and none are individual parties to the Illinois Personnel Code or collective bargaining agreements governing Plaintiff's employment, Plaintiff improperly seeks "to force the State to pay Plaintiff his lost wages associated with his employment with IDOT." d/e 8, p. 14. Defendants cite two Seventh Circuit cases in support. Id. at pp. 13-14.

In Luder v. Endicott, 253 F.3d 1020 (7th Cir. 2001), 145

plaintiffs brought suit under the Fair Labor Standards Act before the Seventh Circuit, which noted that "when a suit is against a public officer in his or her individual capacity, the court is obliged to consider whether it may really and substantially be against the state." Id. at 1023. The 145 plaintiffs' damages "amount sought [was] unclear (indeed cannot be determined exactly until the judgment is entered), but it obviously exceed[ed] the ability of these four defendants to pay." Id. at 1024. Therefore, the Seventh Circuit directed the lower court to dismiss the 145 plaintiffs' suit because they sought "to accomplish exactly what they would accomplish were they allowed to maintain this suit against the state and did so successfully: they are seeking to force the state to accede to their view of the [Fair Labor Standards] Act and to pay them accordingly." Id.

Defendants also cite Omosegbon v. Wells, 335 F.3d 668 (7th Cir. 2003), in which the Seventh Circuit found that a plaintiff suing his state official employers in their individual capacities for money damages could not proceed:

> [The plaintiff]'s claims against the individuals allegedly in their individual capacity present a slightly more complex

question, but because he seeks backpay and other forms of monetary compensation based on an employment contract, we think it so inescapable that any resulting judgment will be paid by the state rather than the individual defendants that this bears no resemblance to a bona fide individual capacity suit. (The individuals, after all, were not even parties to the contract in their individual capacity.) Accordingly, he has no § 1983 claim against these defendants either.

Id. at 673.

Although Plaintiff seeks "[e]conomic damages," "[e]motional distress damages," and "[t]he legal fees and costs associated with bringing this claim," d/e 1, p. 8, Plaintiff's Complaint is distinguishable from Luder and Omosegbon. Plaintiff's Complaint does not allege that Defendants breached an employment contract, as in Omosegbon, but a state statute. See Omosegbon, 335 F.3d at 673. And unlike the 145 plaintiffs and four defendants involved in Luder, Plaintiff alone seeks damages against the five individual Defendants. See Luder, 253 F.3d at 1024. It is not "so inescapable that any resulting judgment will be paid by the state rather than the individual defendants," especially at the motion to dismiss stage. See Omosegbon, 335 F.3d at 673.

Therefore, after considering whether Plaintiff's suit against the

individual Defendants, all public officers, in their individual capacities, the Court has "consider[ed] whether it may really and substantially be against the state," and finds that it is not. <u>Luder</u>, 253 F.3d at 1023.

## V.    CONCLUSION

For the reasons stated, Defendants' Motion to Dismiss Plaintiff's Complaint (d/e 8) is GRANTED only as to Plaintiff's § 1983 claims against the individual Defendants in their official capacities and Plaintiff's request for equitable relief. Defendants' Motion to Dismiss Plaintiff's Complaint (d/e 8) is otherwise DENIED.

**ENTERED:  July 24, 2025.**

**FOR THE COURT:**

*/s/ Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**